**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEBRASKA**

|  |  |
|---|---|
| **BORIS TARASOV,** <br> *Plaintiff,* <br><br> v. <br><br> **DELAWARE NORTH AMERICA LLC,** <br> *Defendant.* | Case No. __8:26 cv 75__ <br><br> **COMPLAINT AND** <br> **JURY DEMAND** |

## NATURE OF ACTION

**1.** This is an action for damages and equitable relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.,* to redress Defendant's unlawful creation and maintenance of a hostile work environment based on Plaintiff's national origin (Russian descent).

**2.** On December 4, 2024, during an internal team meeting attended by multiple colleagues, Defendant's Program Director, Fred Taquin, publicly interrogated Plaintiff about his ethnicity, declared that Plaintiff's Russian heritage constituted "a problem," and suggested that Plaintiff's national origin should be concealed. Defendant's Chairman of the Board subsequently acknowledged in writing that this conduct "should not be tolerated" and represented that the harasser's contract would be terminated. Defendant then reversed course and rehired the harasser approximately six weeks after his departure, demonstrating deliberate indifference to Plaintiff's civil rights.

## JURISDICTION AND VENUE

**3.** This Court has subject matter jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 2000e-5(f)(3).

**4.** Venue is proper in this District pursuant to 42 U.S.C. § 2000e-5(f)(3) because Plaintiff resided and performed his work in the District of Nebraska during the relevant time period, and the unlawful employment practices alleged herein occurred in or affected this judicial district.

**5.** Plaintiff has exhausted his administrative remedies. On September 24, 2025, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission

1

("EEOC"), Charge No. 563-2025-05027, alleging national origin discrimination and harassment in violation of Title VII. On December 15, 2025, the EEOC issued a Determination and Notice of Rights ("Right to Sue" letter). Plaintiff received the Right to Sue letter on or about December 15, 2025. This Complaint is filed within ninety (90) days of Plaintiff's receipt of the Right to Sue letter. A copy of the Right to Sue letter is attached hereto as Exhibit A.

## PARTIES

6. Plaintiff Boris Tarasov ("Plaintiff") is a United States citizen of Russian descent who resides in Elkhorn, Nebraska, within this judicial district. At all times relevant to this action, Plaintiff was employed by Defendant as an Integration Lead.

7. Defendant Delaware North America LLC ("Defendant" or "Delaware") is a limited liability company organized under the laws of the State of Delaware, doing business in Nebraska, with offices at 3626 North Hall Street, Suite 610, Dallas, Texas 75218. Defendant is an information technology consulting firm.

8. At all times relevant to this action, Defendant employed five hundred (500) or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and is therefore an "employer" within the meaning of 42 U.S.C. § 2000e(b). According to the Texas Comptroller's Public Information Report for Year 2024, Delaware Consulting US Inc is a member of Delaware North America LLC. Patrick Andersen simultaneously served as Chairman of the Board of the parent entity, Delaware Consulting International, and as C-Director of Defendant, and personally handled Plaintiff's discrimination complaint. The combined enterprise employs over 5,000 employees worldwide.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Employment

9. Plaintiff was hired by Defendant on or about October 18, 2021, as an Integration Lead, at an annual salary of $200,000. Plaintiff performed his duties remotely from his residence in Elkhorn, Nebraska.

10. Throughout his employment, Plaintiff performed his job competently and satisfactorily. There is no record of any disciplinary action or performance deficiency.

11. In November 2024, Defendant assigned Plaintiff to the Sonaca project, a multinational aerospace engagement.

2

**B. The December 4, 2024 Incident**

**12.** On December 4, 2024, during an internal Delaware team meeting conducted via Microsoft Teams for the Sonaca project, Plaintiff was asked to introduce himself to the team. Multiple Delaware colleagues were present at this meeting.

**13.** During Plaintiff's introduction, Program Director Fred Taquin ("Taquin") interrupted Plaintiff and, in front of the entire team, asked: "Are you Russian?"

**14.** When Plaintiff confirmed that he is of Russian descent, Taquin stated: "We have a problem." Taquin repeated this phrase multiple times.

**15.** When Plaintiff clarified that he is a United States citizen, Taquin responded: "Let's keep it this way." This statement implied that Plaintiff's Russian heritage was something to be concealed or was otherwise objectionable.

**16.** Taquin's statements were unwelcome, discriminatory, and directed at Plaintiff solely because of his national origin. The statements were made publicly, in front of Plaintiff's colleagues, by a supervisor with authority over the project, and constituted an act of ethnic profiling and national origin harassment.

**17.** At the time of the incident, Taquin held the title of Program Director and exercised supervisory authority over the Sonaca project and its team members, including Plaintiff.

**C. Plaintiff's Formal Complaint**

**18.** On January 6, 2025, Plaintiff filed a formal written complaint with Defendant's Human Resources department and Audit & Risk Committee, reporting Taquin's discriminatory conduct and identifying it as a potential violation of Title VII of the Civil Rights Act.

**19.** On January 15, 2025, Patrick Andersen ("Andersen"), who served simultaneously as Chairman of the Board of Delaware Consulting International and C-Director of Delaware North America LLC, sent Plaintiff an email in which he stated:

> *"[Fred Taquin] demonstrated behaviour that should not be tolerated within delaware. It simply is not congruent with our values, it is not who we want to be and what we stand for."*

**20.** This written statement by Defendant's highest-ranking officer in North America constitutes an admission that Taquin's conduct violated Defendant's own standards and values, and that such conduct was intolerable in Defendant's workplace.

3

### D. Defendant's Initial Remedial Measures

**21.** On January 30, 2025, Andersen informed Plaintiff that Taquin was preparing a written apology and that both Taquin and his supervisor "understood this should not happen again."

**22.** On February 12, 2025, Taquin sent Plaintiff a written apology. However, the apology recharacterized Taquin's discriminatory conduct as a "compliance concern" rather than acknowledging the discriminatory nature of his statements. The apology did not acknowledge that Taquin's conduct constituted national origin discrimination or harassment.

**23.** On February 14, 2025, Andersen communicated to Plaintiff via Microsoft Teams that "Fred's contract will terminate by end of March." This representation led Plaintiff to believe that Defendant was taking genuine remedial action in response to Taquin's discriminatory conduct.

### E. Plaintiff's Reassignment from the Sonaca Project

**24.** As a direct result of the hostile work environment created by Taquin's discriminatory conduct, on February 9, 2025, Plaintiff requested reassignment from the Sonaca project. The request was approved, and Plaintiff was reassigned, resulting in disruption to his professional responsibilities, client relationships, and career trajectory.

**25.** Plaintiff's reassignment constituted an adverse alteration of his working conditions caused directly by the hostile work environment.

### F. Defendant Rehires the Harasser

**26.** On or about April 16, 2025, Taquin's contract with Defendant ended, consistent with Andersen's earlier representation.

**27.** However, in late May 2025, approximately six weeks after Taquin's departure, Defendant rehired Taquin.

**28.** On May 27, 2025, Plaintiff discovered Taquin's rehiring when Taquin appeared in Defendant's internal Outlook organizational chart and showed an active presence status on Microsoft Teams. Plaintiff documented this discovery through screenshots of both the Outlook org chart and the Teams active presence indicator.

**29.** Defendant's decision to rehire Taquin, the individual whose discriminatory conduct Defendant's own Chairman had called intolerable, demonstrated that Defendant did not genuinely regard Taquin's discriminatory harassment as serious misconduct. This rehiring

4

constituted a ratification of Taquin's discriminatory conduct and a repudiation of any remedial action Defendant had previously taken.

**30.** The rehiring of Taquin transformed Defendant's initial response from an arguably adequate remedial measure into evidence of deliberate indifference to Plaintiff's right to a workplace free from national origin discrimination. Defendant's remedial action was not "prompt and effective" because Defendant reversed it within approximately six weeks.

### G. Taquin's Conduct Was Not a Legitimate Compliance Inquiry

**31.** The Sonaca project operated on commercial cloud infrastructure. During his tenure with Defendant, Plaintiff had worked on multiple projects subject to ITAR requirements, where infrastructure operated in the U.S. Government Cloud and team members were required to be trusted U.S. persons. On each of those projects, compliance was handled through proper corporate channels: company-initiated background checks and formal citizenship confirmation letters issued through human resources, conducted privately before project assignment.

**32.** Taquin's public interrogation of Plaintiff about his ethnicity bore no resemblance to these legitimate compliance procedures. Taquin's statements, "We have a problem" (repeated multiple times) and "Let's keep it this way" (after Plaintiff confirmed his U.S. citizenship), demonstrate that Taquin's concern was with Plaintiff's ethnicity, not his citizenship or export-control status.

**33.** Defendant's own Chairman subsequently acknowledged that Taquin's conduct "should not be tolerated," which is inconsistent with a good-faith compliance inquiry.

### H. EEOC Proceedings

**34.** On September 24, 2025, Plaintiff filed a Charge of Discrimination with the EEOC (Charge No. 563-2025-05027), alleging national origin discrimination and harassment under Title VII. The charge was perfected on December 9, 2025. On December 15, 2025, six (6) days after perfection, the EEOC closed the charge and issued a Determination and Notice of Rights (Right to Sue letter), which expressly stated: "This does not mean the claims have no merit."

**35.** Plaintiff's employment with Defendant continued until January 30, 2026, when Plaintiff resigned. Plaintiff commenced new employment on February 2, 2026.

## COUNT I

### HOSTILE WORK ENVIRONMENT BASED ON NATIONAL ORIGIN

5

**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1))**

**36.** Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

**37.** Plaintiff is a member of a protected class under Title VII. Plaintiff is a United States citizen of Russian descent, and his national origin is a protected characteristic under 42 U.S.C. § 2000e-2(a)(1).

**38.** Plaintiff was subjected to unwelcome conduct based on his national origin. On December 4, 2024, Taquin singled out Plaintiff based on his Russian heritage, publicly questioned his suitability for a project based on his ethnicity, and suggested that his national origin should be concealed.

**39.** The harassment was sufficiently severe to alter the conditions of Plaintiff's employment and create an abusive working environment. The following factors establish severity: (a) the harasser, Taquin, was a supervisor (Program Director) with authority over the project and its team members; (b) the harassment was committed publicly, in front of Plaintiff's colleagues, causing humiliation; (c) the harassment directly targeted Plaintiff's protected characteristic (national origin); (d) Defendant's own Chairman admitted the conduct was intolerable; and (e) Plaintiff requested reassignment as a direct result. Under Eighth Circuit precedent, a single severe incident by a supervisor can establish a hostile work environment. *See Carpenter v. Con-Way Cent. Express, Inc.,* 481 F.3d 611, 618 (8th Cir. 2007).

**40.** Defendant failed to take prompt and effective remedial action. Although Defendant initially let Taquin's contract lapse in April 2025, Defendant rehired Taquin approximately six weeks later, in or about late May 2025. This reversal of remedial action demonstrates deliberate indifference to Plaintiff's right to a discrimination-free workplace. *See Vance v. Ball State University,* 570 U.S. 421, 427 (2013) (employer liability for supervisor harassment); *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998).

**41.** As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer emotional distress, humiliation, anxiety, and other compensable injuries. Plaintiff requested reassignment from the Sonaca project as a result of the hostile work environment, disrupting his professional responsibilities and career trajectory.

**42.** Defendant's conduct was willful and undertaken with reckless indifference to Plaintiff's federally protected rights. Defendant's Chairman acknowledged in writing that Taquin's conduct was intolerable, yet Defendant rehired Taquin approximately six weeks later,

6

demonstrating reckless disregard for Plaintiff's civil rights. This conduct warrants an award of punitive damages pursuant to 42 U.S.C. § 1981a(b).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Boris Tarasov respectfully requests that this Court enter judgment in his favor and against Defendant Delaware North America LLC, and award the following relief:

(a) Compensatory damages for emotional distress, humiliation, mental anguish, and other non-economic injuries, up to the maximum amount permitted under 42 U.S.C. § 1981a(b)(3);

(b) Punitive damages for Defendant's willful and reckless indifference to Plaintiff's federally protected rights, up to the maximum amount permitted under 42 U.S.C. § 1981a(b)(3);

(c) Back pay and front pay, including lost benefits, to the extent applicable;

(d) Pre-judgment and post-judgment interest as allowed by law;

(e) Reasonable attorney's fees and costs of this action, including expert fees, pursuant to 42 U.S.C. § 2000e-5(k);

(f) Injunctive relief, including an order requiring Defendant to implement and enforce policies and training to prevent national origin discrimination and harassment;

(g) Such other and further relief as this Court deems just and equitable.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable in this action.

### CERTIFICATION UNDER RULE 11

Pursuant to Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this Complaint: (1) is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or

by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) this Complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Respectfully submitted,

**Boris Tarasov,** *Pro Se*

1004 N 192nd Ct Apt 302

Elkhorn, NE 68022

Telephone: (469) 263-2822

Email: boris.tarasov@outlook.com

Dated: _Feb 20_, 2026

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Kansas City Area Office**
400 State Ave, Suite 905
Kansas City, KS 66101
(913) 340-8810
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 12/15/2025

**To:** Mr. Boris Tarasov
1004 N 192nd Ct Apt 302
Elkhorn, NE 68022
Charge No: 563-2025-05027

EEOC Representative and email:    ORIENTA KIRKSEY
EQUAL OPPORTUNITY INVESTIGATOR
ORIENTA.KIRKSEY@EEOC.GOV

### DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 563-2025-05027.

On behalf of the Commission,

Digitally Signed By:David Davis
12/15/2025
David Davis
District Director

**Cc:**
Ashley Bryant
Delaware North America LLC
3626 N Hall St Ste 610
Dallas, TX 75219

DELAWARE NORTH AMERICA LLC
1004 N 192ND CT APT 302
ELKHORN, NE 68022

Please retain this Notice for your records.